# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**RON W.,**

        **Plaintiff,**

                            **Case No. 2:20-cv-12522**

    **v.**                               **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Ron W. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

## I.    PROCEDURAL HISTORY

On March 8, 2017, Plaintiff filed his application for benefits, alleging that he has been disabled since October 28, 2014. R. 59, 190−98. The application was denied initially. R. 72−83.[2]

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

[2] The record does not reflect reconsideration of the initial denial of Plaintiff's application. *See* R. 15 (noting that Plaintiff requested a hearing after the initial denial); *see also Plaintiff's Memorandum of Law*, ECF No. 15, p. 1 (referring to only an initial denial before a hearing

Plaintiff sought a *de novo* hearing before an administrative law judge. R. 84–85. Administrative Law Judge ("ALJ") Sharda Singh held a hearing on February 25, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 37–58. In a decision dated April 30, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from October 28, 2014, Plaintiff's alleged disability onset date, through the date of that decision. R. 37–58. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 9, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 30, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[3] On that same day, the case was reassigned to the undersigned. ECF No. 11. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

---

before an ALJ was held); *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, p. 4 (same).

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record").  Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

5

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d

632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial

gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not

disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or

combination of impairments that "significantly limits [the plaintiff's] physical or mental ability

to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not

disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of

impairments "meets" or "medically equals" the severity of an impairment in the Listing of

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §

404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.*

at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC")

and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not

disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC,

age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 30 years old on his alleged disability onset date. R. 30. At step one, the ALJ found that, although Plaintiff had engaged in "significant work activity after the alleged onset date," he had not engaged in substantial gainful activity "for more than a brief period." R. 17−18.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: asthma, lumbar disc herniation deforming the thecal sac, right knee arthroscopic surgery for meniscal tear, and dislocated right shoulder. R. 18.  The ALJ also found that Plaintiff's alleged "cognitive effects of stress" were not severe. R. 18−19.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19−20.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 20−30.  The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a computer technician and supervisor of shipping. R. 29 − 30.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 20,000 jobs as an order clerk, food and beverage; approximately 30,000 jobs as a final assembler; approximately 15,000 jobs as a table worker —existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 30−31. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act

from October 28, 2014, his alleged disability onset date, through the date of that decision. R. 31–32.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Acting Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 19. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 18.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

On March 8, 2016, Plaintiff presented to his treating pain management specialist, Gideon Hedrych, M.D., for evaluation. R. 340–41. Dr. Hedrych noted that Plaintiff had been involved in a work-related traffic accident, injuring his right knee and upper and lower back. R. 340. In November 2015, Plaintiff underwent cortisone injections (administered by a different treating physician) to his right knee with some improvement, but Plaintiff ultimately underwent right knee arthroscopic surgery on January 12, 2016 (performed by a different treating physician). *Id*. Plaintiff complained to Dr. Hedrych of upper and lower back pain with associated limitation and right knee pain with walking and increased pain with stair-climbing. *Id*. Upon physical examination, Dr. Hedrych noted and opined as follows:

PHYSICAL EXAMINATION:

Habitus and gait: Ambulates with moderately antalgic gait favoring right lower extremity.

Thoracolumbar spine: Pain on flexion greater than 60 degrees, extension greater than 10 degrees, lateral flexion to the right greater than 15 degrees and to the left greater than 15 degrees, rotation to the right greater than 15-20 degrees and to the

left greater than 15-20 degrees. Palpation/Tone: Moderate bilateral paravertebral muscle spasm.

Straight-leg raise: Positive at 40 degrees.

Right knee: Arthroscopic portal incision scars. Tenderness over anteromedial joint line and anterolateral joint line. Pain with limitation of flexion to 100 degrees and on full extension.

DIAGNOSTIC IMPRESSION:

1. Thoracic spine sprain/strain, consider derangement, radiculopathy and/or thoracic spinal cord myelopathy.
2. Lumbar spine derangement with L5/S1 disc herniation abutting proximal SI nerve roots bilaterally, with bilateral proximal neural foraminal extension, and L4-5 disc herniation abutting proximal L5 nerve roots bilaterally, with bilateral proximal neural foraminal extension.
3. Right knee derangement with torn medial meniscus, status post arthroscopic surgery (1/12/16).

The preceding diagnoses represent injuries causally related to the accident of 10/28/14.

R. 340−41. Dr. Hedrych also opined as follows:

Work: Unable to work as of 11/26/14 due to right shoulder injury (sustained on first day of returning to work, after a few hours into the day). Returned to work 11/26/14. Had been unable to work since date of accident as computer technician for Walgreens drugstores in New York City area, Long Island, and Westchester, which involved installing and servicing satellite dishes, closed-circuit video cameras, cash registers, servers, and computers.

Disability: Total (as of 1/12/16 right knee surgery).

R. 340.

In a follow-up examination on June 9, 2016, R. 344−45, Plaintiff complained to Dr.

Hedrych of daily upper back pain and associated limitation, daily lower back pain and limitation,

radiating to the legs, and right knee pain with walking and that increased on stair-climbing. R.

344. Upon physical examination, Dr. Hedrych noted as follows:

Habitus and gait: Ambulates with mildly to moderately antalgic gait favoring right lower extremity.

> Thoracolumbar spine: Pain on flexion greater than 60-65 degrees, extension greater than 10-15 degrees, lateral flexion to the right greater than 20 degrees and to the left greater than 15-20 degrees, rotation to the right greater than 20 degrees and to the left greater than 20 degrees. Palpation/Tone: Moderate bilateral paravertebral muscle spasm.
>
> Straight-leg raise: Positive at 40 degrees.
>
> Right knee: Arthroscopic portal incision scars. Tenderness over anteromedial joint line and anterolateral joint line. Pain on full extension and with limitation of flexion to 110 degrees.

R. 344−45. Dr. Hedrych's diagnostic impression remained the same. R. 345. Dr. Hedrych also

opined as follows:

> Work: Unable to work as of 11/26/14 due to right shoulder injury (sustained on first day of returning to work, after a few hours into the day). Returned to work 11/26/14. Had been unable to work since date of accident as computer technician for Walgreens drugstores in New York City area, Long Island, and Westchester, which involved installing and servicing satellite dishes, closed-circuit video cameras, cash registers, servers, and computers.
>
> Restrictions: No repetitive or sustained bending or twisting of torso. No repetitive or prolonged climbing up or down stairs or ladders. No repetitive or sustained kneeling, squatting or crawling. No repetitive lifting or lifting more than 10 pounds, No prolonged sitting or standing more than one hour continuously. No repetitive walking or prolonged walking more than four blocks at a time.
>
> Disability: 75% partial.

R. 344.

In another examination, conducted on October 21, 2016, R. 374−75, Plaintiff again

complained to Dr. Hedrych of right knee pain on ambulation and accentuated with ascending and

descending stairs as well as daily low back pain radiating to the legs, greater on the right than on

the left. R. 374. Plaintiff also complained of mid-level back pain and associated limitation. *Id*.

Upon physical examination, Dr. Hedrych noted as follows:

> Habitus and gait: Ambulates with mildly to moderately antalgic gait favoring right lower extremity.

Thoracolumbar spine: Pain on flexion greater than 65 degrees, extension greater than 10 degrees, lateral flexion to the right greater than 20 degrees and to the left greater than 20 degrees, rotation to the right greater than 20 degrees and to the left greater than 20-25 degrees. Palpation/Tone: Moderate bilateral paravertebral muscle spasm.

Straight-leg raise: Positive at 40 degrees.

Right knee: Arthroscopic portal incision scars. Tenderness over anteromedial joint line and anterolateral joint line, pain on full extension and pain with limitation of flexion to 115 degrees.

R. 374−75. Dr. Hedrych's diagnostic impression remained the same, R. 375, and he opined as

follows:

Work: Unable to work as of 11/26/14 due to right shoulder injury (sustained on first day of returning to work, after a few hours into the day). Returned lo work 11/26/14. Had been unable to work since date of accident as computer technician for Walgreens drugstores in New York City area, Long island, and Westchester, which involved installing and servicing satellite dishes, closed-circuit video cameras, cash registers, servers, and computers.

Restrictions: No repetitive or sustained bending or twisting of torso. No repetitive or prolonged climbing up or down stairs or ladders. No repetitive or sustained kneeling, squatting or crawling. No repetitive lifting or lifting more than 10 pounds. No prolonged sitting or standing more than one hour continuously. No repetitive walking or prolonged walking more than four blocks at a time.

Disability: 75% partial.

R. 374.

On October 21, 2016, Dr. Hedrych also completed a one-page, pre-printed check-the-box

form ("Dr. Hedrych's one-page October 21, 2016, opinion"). R. 384. Dr. Hedrych indicated that

Plaintiff's experience of pain and/or other symptoms was not sufficiently severe to ever interfere

with his attention and concentration. *Id*. Plaintiff could sit and stand for 45 minutes at a time for

a total of less than two hours in an eight-hour work day with normal breaks. *Id*. Plaintiff would

need to shift positions at will from sitting, standing, or walking. *Id.* Plaintiff could frequently

(defined as between one-third and two-thirds of the working day) lift and carry up to ten pounds,

occasionally (defined as less than one-third of the working day) lift and carry up to twenty

pounds, and never lift and carry fifty pounds. *Id.* Plaintiff could occasionally reach, bend, stoop,

handle, push/pull, kneel, and squat, but could never crawl or climb. *Id.*

## V.   DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination

because the ALJ failed to properly weigh Dr. Hedrych's opinions. *Plaintiff's Memorandum of

Law*, ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 19. This Court agrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R.

§ 404.1545(a)(1). At the administrative hearing stage, the ALJ is charged with determining the

claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc.

Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State

agency consultants—must make the ultimate disability and RFC determinations.") (citations

omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence.

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only

"credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see

also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to

choose whether to include "a limitation [that] is supported by medical evidence, but is opposed

by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject

evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the

discretion to include a limitation that is not supported by any medical evidence if the ALJ finds

the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the exertional demands of sedentary work as defined in 20 CFR 404.1567(a), with the following additional limitations: requires a sit/stand option, defined as standing up at the workstation every 20-30 minutes for 1-2 minutes before resuming sitting without being away from the workstation or off task; is limited to frequent pushing/pulling with the right upper extremity; cannot perform overhead reaching with the right upper extremity; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps, climb stairs, balance, stoop, kneel, crouch, and crawl; can frequently perform fine and gross hand manipulations with the right hand; should avoid hazards, such as moving machinery; and can frequently reach in front of the body.

R. 20.

Plaintiff argues that this RFC determination is not supported by substantial evidence because the ALJ improperly discounted Dr. Hedrych's opinions and failed to give good reasons for discounting those opinions. *Plaintiff's Memorandum of Law*, ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 19. An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli*, 247 F.3d at 42 ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without such an explanation, "the reviewing court cannot tell if significant probative evidence

13

was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121

(citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[4] "'[a] cardinal principle guiding disability

eligibility determinations is that the ALJ accord treating physicians' reports great weight,

especially when their opinions reflect expert judgment based on a continuing observation of the

patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F.

App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see*

*also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ

should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d

at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at

times even controlling weight") (cleaned up). However, "[a] treating source's opinion is not

entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case

record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R.

§ 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir.

2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and

inconsistent with the other evidence in the record."). "In choosing to reject the treating

physician's assessment, an ALJ may not make speculative inferences from medical reports and

may reject a treating physician's opinion outright only on the basis of contradictory medical

evidence and not due to his or her own credibility judgments, speculation or lay opinion."

---

[4] As previously noted, Plaintiff's claim was filed on March 8, 2017. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

*Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must

consider the following factors when deciding what weight to accord the opinion of a treating

physician: (1) the length of the treatment relationship and frequency of examination; (2) the

nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the

consistency of the opinion with the record as a whole; (5) the treating source's specialization;

and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still

may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'"

*Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225

F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the

government 'may properly accept some parts of the medical evidence and reject other parts,' the

government must 'provide some explanation for a rejection of probative evidence which would

suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994));

*Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a

non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642

F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the

wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been

rejected is required so that a reviewing court can determine whether the reasons for rejection

were improper.") (internal citation omitted).

  In the case presently before the Court, the ALJ assigned "little weight" to Dr. Hedrych's

opinions, reasoning as follows:

> Little weight is accorded to the out-of-work notes and the various notations by the
> claimant's pain management specialist, Gideon Hedrych, M.D., physiatrist, Ofra
> Blonder, M.D., and orthopedic surgeon, Thomas A. Scilaris, M.D., that the
> claimant is "totally disabled" or has a 75% disability (Exhibits 1F, p. 3; 2F, pp. 47
> [R. 340, excerpt from Dr. Hedrych's opinion dated March 8, 2016] and 51 [R. 344,
> excerpt from Dr. Hedrych's opinion dated June 9, 2016]; and 6F, p. 8). Specifically,

the finding that the claimant is "disabled" or unable to work is an issue reserved to the Commissioner in determining the claims for Social Security benefits. Moreover, the remainder of the opinions indicating that the claimant has extreme limitations of functioning are not supported by the scant chronically positive objective clinical and laboratory findings, as outlined above.

The remaining opinions of Drs. Hedrych and Scilaris are accorded little weight. In a report dated October 21, 2016, Dr. Hedrych identified greater physical limitations, including (but not limited to): ability to sit for less than two hours total, ability to stand/walk for less than two hours, need to shift positions at will, and never climb or crawl (Exhibit 8F [R. 384, excerpt from Dr. Hedrych's opinion from follow-up evaluation dated October 21, 2016]). At other times, Dr. Hedrych indicated that the claimant cannot lift more than 10 pounds; cannot stand or walk for more than one hour at a time; cannot perform repetitive walking; cannot walk for more than four blocks at a time, and has significant postural limitations involving bending, twisting, climbing, kneeling, squatting, and crawling (See, e.g., Exhibit 2F, p. 51 [R. 344, excerpt from Dr. Hedrych's opinion dated June 9, 2016]). In October 2015, Dr. Scilaris determined that the claimant has significant limitations in lifting and traveling (Exhibit 6F, p. 8). However, the medical opinions are not well-supported given the scant chronically positive objective clinical findings outlined above. Furthermore, *Dr. Hedrych's October 2016 opinion amounts to a "check box" form without referral to clinical or diagnostic finding or narrative explanation for the limitations that were provided. Instead, the limitations identified by Drs. Hedrych and Scilaris appear to be based primarily on the claimant's subjective self-reports of symptoms* and functional limitations that are inconsistent with the evidence for the reasons outlined above, including (but not limited to): the claimant's overall positive response to surgery and conservative treatment, his inconsistent statements about the severity of his symptoms, and his engagement in activities consistent with a range of sedentary work. The residual functional capacity otherwise reflects the findings by Dr. Hedrych that the claimant is unable to lift and carry more than 10 pounds (Exhibit 2F, p. 21) and requires a sit/stand option based on no prolonged sitting for more than one hour (Exhibit 2F, p. 51 [R. 344, excerpt from Dr. Hedrych's opinion dated June 9, 2016]). However, greater functional limitations are not supported by other substantial evidence, as outlined more fully below.

R. 26−27 (emphasis added).

In challenging the ALJ's consideration of Dr. Hedrych's opinions, Plaintiff specifically argues, *inter alia*, that the ALJ improperly discounted the doctor's October 21, 2016, one-page opinion because of its "check box" form and because it appeared to be based on Plaintiff's subjective complaints. *Plaintiff's Memorandum of Law*, ECF No. 15, p. 33; *Plaintiff's Reply Brief*, ECF No. 19, pp. 3−4. Plaintiff argues that, although the reliability of "check box" forms

16

may be suspect when they are not accompanied by thorough written reports, Dr. Hedrych's treatment notes supported his one-page opinion. *Id.* Plaintiff also argues that the ALJ erred by simply speculating that Dr. Hedrych relied primarily on Plaintiff's subjective complaints. *Id.*

Plaintiff's arguments are well taken. The ALJ expressly discounted Dr. Hedrych's one-page October 21, 2016, opinion because it "amounts to a 'check box' form without referral to clinical or diagnostic finding or narrative explanation for the limitations that were provided." R. 27. However, the ALJ failed entirely to acknowledge Dr. Hedrych's two-page, contemporaneous, typed evaluation, which reflected his specific findings on his physical examination of Plaintiff and which supports his opinion as to Plaintiff's limitations. R. 27, 374−75. For example, at the office visit of October 21, 2016, Dr. Hedrych specifically found, *inter alia*, mildly to moderately antalgic gait favoring the right lower extremity; pain in the thoracolumbar spine on flexion greater than 65 degrees, on extension greater than 10 degrees, on lateral flexion to the right greater than 20 degrees and to the left greater than 20 degrees, and on rotation to the right greater than 20 degrees and to the left greater than 20-25 degrees; moderate bilateral paravertebral muscle spasm of the thoracolumbar spine; positive straight-leg raising at 40 degrees; right knee tenderness over the anteromedial joint line and the anterolateral joint line; and pain on full extension of right knee and limitation to flexion to 115 degrees. R. 374−75; *cf. Zwiebel v. Saul*, No. CV 19-1962, 2020 WL 2079189, at *7, 10−11 (E.D. Pa. Apr. 30, 2020) (finding that substantial evidence did not support the ALJ's rejection of the treating opinion that the claimant "could sit for a total of three hours, and stand and walk for a total of one hour each, and that he needed to change positions every thirty minutes[,]" which was supported by the claimant's "pain/spasm in his lumbar spine and right hip, decreased range of motion, and spasm in his cervical spine with radicular pain to his shoulders[,]" where the ALJ's "primary reason" for

17

discounting such opinion—*i.e.*, that the physician relied on subjective complaints and that spasm and decreased range of motion were not supported by objective examination findings—was "both misleading and factually incorrect"); *Molina v. Barnhart*, No. 04 CIV. 3201, 2005 WL 2035959, at *2 n.9 (S.D.N.Y. Aug. 17, 2005) ("The average ranges of motion for thoracolumbar lateral flexion . . . and rotation . . . , are sixty degrees to each side. . . . A person with a lateral flexion range of motion of at least fifty degrees to each side is not considered to have lost range of motion. . . . A person with rotation of at least thirty degrees to each side is not considered to have lost range of motion.") (citations omitted). Although Dr. Hedrych did not repeat all these written findings in support of the limitations identified in the preprinted, one-page October 21, 2016, opinion, *see* R. 384, his typewritten evaluation contains findings made on clinical examination, R. 374–75, and which appear to support the limitations identified in his one-page opinion. The ALJ's statement that "Dr. Hedrych's October 2016 opinion amounts to a 'check box' form without referral to clinical or diagnostic finding or narrative explanation for the limitations that were provided[,]" R. 27, is therefore misleading to the extent that it suggests that there was no objective support for this opinion. Although an ALJ is free to weigh the opinions of even a treating physician and to determine whether to credit those opinions, the ALJ cannot reject evidence from a treating physician "for the wrong reason." *Morales*, 225 F.3d at 317 (citation and internal quotation marks omitted); *see also Rodriguez v. Colvin*, No. CV 16-4322, 2018 WL 1474073, at *4 (E.D. Pa. Mar. 23, 2018) ("Courts have concluded that substantial evidence cannot be based on factual errors.") (collecting cases); *cf. Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008) (reversing and remanding for payment of benefits where, *inter alia*, the ALJ supported his rejection of a treating physician's "opinion of disability in large part on evidence that does not exist" and "concluding that "[t]his mistake, and others like it, indicate

that the ALJ's decision to discredit [the treating physician] was not supported by substantial evidence").

Moreover, in discounting Dr. Hedrych's one-page October 21, 2016, opinion, the ALJ speculated that the limitations contained in that opinion, *inter alia*, "appear to be based primarily on the claimant's subjective self-reports of symptoms[.]" R. 27. However, as detailed above, Dr. Hedrych conducted a physical examination of Plaintiff on that same day and made objective clinical findings that support the limitations articulated in his one-page October 21, 2016, opinion. R. 374–75, 384. Although an ALJ "may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of [his] symptoms and limitations[,]" *Morris v. Barnhart*, 78 F. App'x 820, 825 (3d Cir. 2003), the ALJ in this action improperly speculated that Dr. Hedrych's one-page October 21, 2016, opinion was based "primarily" on Plaintiff's subjective complaints. *Cf. Morales*, 225 F.3d at 317 (stating that an ALJ may not make "speculative inferences from medical reports"); *Shannon v. Comm'r of Soc. Sec.*, No. 15-6480, 2016 WL 5133741, at \*11 (D.N.J. Sept. 20, 2016) (finding that the ALJ's decision "to assign little weight to Dr. Franck's opinions is not supported by substantial evidence" because, "while Dr. Franck relied on Plaintiff's subjective complaints, Dr. Franck also relied upon clinical findings and objective medical evidence, such as a positive results on straight leg raise tests and MRI results" and, therefore, "[t]he ALJ did not evaluate Dr. Franck's opinions to the extent they rely upon objective medical evidence. On remand, the ALJ should do so"); *McDonnell v. Colvin*, No. 315CV00383, 2016 WL 1425798, at \*6 (M.D. Pa. Mar. 18, 2016), *report and recommendation adopted*, No. 3:15CV383, 2016 WL 1446216 (M.D. Pa. Apr. 11, 2016) (finding that the "ALJ mischaracterized the record in concluding that Dr. Parmelee's opinion was primarily based on Plaintiff's subjective complaints" where that physician's examination

19

indicated, *inter alia*, thoracolumbar scoliosis, standing and moving with difficulty, tenderness in the sacroiliac joint and spine, muscle spasm in her the cervical spine, lumbar spine, and trapezius muscles, limited range of motion, positive straight leg raise, limited and painful range of motion in the hip); *Poust v. Colvin*, No. 3:14CV1357, 2015 WL 3405235, at \*5 (M.D. Pa. May 26, 2015) (finding that substantial evidence did not support the ALJ's assessment of physician's opinion where the "report never states that he based his conclusions on plaintiff's subjective complaints. Yet, the ALJ speculated that [the physician's] conclusions 'appear to be based on the claimant's subjective complaints" and, in short, "the ALJ found the plaintiff not credible, and therefore, discredited [the physician's] consultative report because it was allegedly based on statements from the plaintiff"); *Keller v. Colvin*, 3:12–CV–01502, 2014 WL 658064 at \*9 (M.D. Pa. Feb. 20, 2014) (noting that "positive objective findings" included reduced range of motion of the lumbar spine and muscle spasm).

In short, the ALJ erred when she discounted Dr. Hedrych's one-page October 21, 2016, opinion, in part, because it was a "check box" form with, *inter alia*, no contemporaneous clinical findings and because of her speculation that Dr. Hedrych's opinion "appear[s] to be based primarily on the claimant's subjective self-reports[.]" R. 27. Accordingly, this Court cannot conclude that substantial evidence supports the ALJ's assignment of "little weight" to Dr. Hedrych's one-page October 21, 2016, opinion based on this record, particularly when the limitations articulated in that opinion are inconsistent with the ALJ's RFC for a limited range of sedentary work. *See* R. 20. *See also* SSR 83-10 (stating that, for sedentary work, "sitting should generally total approximately 6 hours of an 8-hour workday"). It may very well be that, upon further consideration, the ALJ and the Commissioner will again assign "little weight" to Dr. Hedrych's one-page October 21, 2016, opinion. That determination, however, is for the

Commissioner—not this Court—to make in the first instance. *See Belfon v. Berryhill*, No. CV 1:17-490, 2018 WL 4691049, at *3 (D. Del. Sept. 28, 2018) ("Thus, the ALJ obviously erred in his reading of Dr. Borson's report. Whether or not the ALJ's opinion would be altered by a correct reading of Dr. Borson's report is not for the court to surmise."); *Lasher v. Colvin*, No. CV 15-26-E, 2015 WL 9489787, at *3–4 (W.D. Pa. Dec. 30, 2015) ("Although, as noted, the ALJ's belief that Dr. Prabhu's prognosis that Plaintiff's condition was fair to good was only part of his analysis, it was important enough to be discussed as a stated reason for rejecting certain of Dr. Prabhu's opinions. The Court cannot assume that the correct reading of the prognosis would not change how the ALJ would review Dr. Prabhu's rejected opinions, particularly in light of the significant weight generally afforded to the opinions of a claimant's treating physician."). This Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of the one-page October 21, 2016, opinion of Gideon Hedrych, M.D., Plaintiff's treating physician.[5]

## VI.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  May 27, 2022                          *s/Norah McCann King*
                                        NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Hedrych's one-page October 21, 2016 opinion and the RFC, the Court does not consider those claims.